[Civ. No. 13268.   First Dist., Div. One.   June 13, 1947.]

VIVIAN L. GARSIDE, a Minor, etc., Appellant, v.
THOMAS GARSIDE et al., Respondents.

(Two Cases.)

Garth V. Lacey for Appellant.

A. E. Warth and James H. Walker for Respondents.

PETERS, P. J.—Plaintiff, Vivian L. Garside, instituted two separate actions against defendants. The first (superior court action 19923) sought a declaration of her claimed interest in certain real property standing of record in the name of defendant Andrew Tarp, and the second (superior court action 20086) sought to vacate a judgment and order of sale rendered in a prior partition action involving the same property, on the ground that such judgment and sale had been procured in violation of her rights, and that the court that rendered such judgment had no jurisdiction of her rights. The two actions were consolidated for trial, and but one judgment rendered. The trial court denied the prayer for declaratory relief and refused to vacate the partition judgment. In addition, on the cross-complaint of Andrew Tarp, the court quieted his title to the property and decreed that Vivian L. Garside has no right, title or interest in it. From this judgment the plaintiff has appealed.

The appellant has had considerable difficutly in presenting a proper record on this appeal. The reporter's transcript is incompletely certified in that the certification merely refers to action 20086 and no reference is made in the certification to action 19923. It is also an admitted fact that even in action 20086 the reporter's transcript omits one day's proceedings. This has resulted in various motions in this court. From the affidavits filed on such motions on behalf of appellant it appears that the court reporter who took down the proceedings

of the day in question was a substitute reporter who had entered the diplomatic service and was not available to transcribe his notes, being then in Europe. Appellant was given ample time by this court to secure a proper reporter's transcript, the appeal and various motions, including respondents' motion to dismiss because of the incomplete record, being continued to await the return of the reporter. The various motions finally were set for hearing on the February, 1947, calendar. ■ At that hearing all of the motions by both sides were withdrawn by stipulation, it being agreed that it was impossible to secure a reporter's transcript of the proceedings for the day in question. At that hearing appellant agreed that under the circumstances she desired to have the appeal heard as if it had been taken on the judgment roll alone. In other words, appellant has not seen fit to take advantage of the various other methods of securing a record provided by the rules, but has elected now to have her appeal decided according to the rules applicable to judgment roll appeals. The notice of appeal was filed February 16, 1943, so that rule 52 of the Rules on Appeal is not applicable to this appeal. The new Rules on Appeal became effective on July 1, 1943, and rule 53b expressly provides that rule 52 is not applicable to appeals then pending. For this reason rule 52 can have no application to this appeal, and this appeal must be determined according to the rules and presumptions existing before July 1, 1943. According to the rules then existing, where the reporter's transcript was not complete, the findings were conclusively presumed to be supported by the omitted evidence, and such findings had to be construed, if possible, to uphold the judgment. All ambiguities had to be construed in favor of sustaining the judgment.

■ On an appeal on the judgment roll alone, or on less than a full reporter's transcript, according to the law as it existed prior to July 1, 1943, every presumption and intendment had to be resolved in favor of the regularity of the proceedings in the trial court. (See discussion and collection of cases *Gin S. Chow* v. *City of Santa Barbara*, 217 Cal. 673 at p. 680 [22 P.2d 5].) This is probably still the law as to appeals on incomplete records as distinguished from short records permitted by the rules. These are the rules applicable to this appeal. Certain exhibits have been transferred to this court by stipulation, and will be considered for what light they may cast upon the controversy.

The present actions have their origin in the fact that by the will of Thomas Garside, Sr., and by the decree of distribution in his estate, appellant became, as a then unborn child, a contingent remainderman in his estate. Thomas Garside, Sr., and his wife Ann, owned, as community property, about 153 acres of land in Monterey County. They had six children —Robert, William, John, Joseph, Thomas, Jr. (father of appellant), and Alice. Thomas Garside, Sr., died testate in February, 1911. At that time and until her death the wife was incompetent. The will directed that the real property should be divided into six equal parcels, and that each child should take one of the parcels for life with remainder over to each child's respective issue. Thus, by the will, the testator attempted to will away the interest of his wife as well as his own interest. In realization of this fact, the six children, in July, 1912, before the administration of their father's estate had been completed, entered into a contract in reference to the property. By that contract it was recognized that the ranch had been community property of the husband and wife, and that the father had exceeded his powers in attempting to will to each child an entire life interest in a specified one-sixth of the property. It was further agreed that the decree of distribution in the father's estate had to distribute to the mother a one-half interest in the whole property, and would distribute an undivided one-half in a specified parcel to each of the six contracting parties. It was further recognized that the mother was unable to make a will because of her incompetency. It was then contracted that upon the mother's death her one-half of the ranch should be distributed to the six children, each receiving the mother's one-half interest in the respective parcel allocated to each of the children under the father's will.

The estate of the father was distributed in August, 1912, in accordance with the provisions of the contract and in accordance with law. By that decree the ranch was determined to be community property, and, pursuant to the terms of the will, it was divided into six equal parcels of 25.66 acres each, labelled parcel "A" through parcel "F." Pursuant to the terms of the will as modified by the contract, the decree distributed an undivided one-half interest in a specific parcel to the six children, Thomas Garside, Jr., father of appellant, receiving parcel "F." The decree provides that the interest

is given to Thomas Garside, Jr., "to have, hold and enjoy the same, for and during his NATURAL LIFE, without power of alienation or incumbrance, giving and vesting in him, a life estate ONLY, of, in and to said Subdivision 'F.' The remainder in fee, is hereby given and distributed to the issue begotten by him, surviving, the said Thos. Garside, in equal shares. IN THE EVENT that said Thomas Garside [Jr.] dies without issue surviving him, then and in such case said Subdivision 'F' is hereby distributed to his heirs, then alive." The other five children were given similar undivided one-half life interests in their respective parcels. The other undivided one-half interest in the entire tract was distributed to the incompetent mother of the life tenants. After the decree each of the children took possession of the parcel distributed to him or to her.

The mother died intestate in 1917, all six children then being alive. By the decree of distribution in her estate there was distributed to each of the six children an undivided one-sixth interest in her undivided one-half interest in the entire 153 acres. These interests, of course, were in fee simple and not subject to any remainder interest in the children of the distributees. Thus, at this time, each child owned a one-twelfth interest in the entire property, in fee, and held a one-twelfth interest in his or her parcel as life tenant.

In 1919, four of the Garside children, including appellant's father, brought an action against the other two children, and against the then three living children of the life tenants, requesting that the court order a sale of the entire 153 acres and order the proceeds divided among the parties to the action according to their respective rights. The defendants in that action, by amended prayer, admitted the allegations of the complaint and concurred in the prayer of the amended complaint. The amended complaint in that proceeding alleged that the only three grandchildren of Thomas Garside, Sr., were parties to the action; that the ages of the six children of Thomas Garside, Sr., were then: "Robert Garside, 62 years; Thomas Garside [Jr.], 46 years; Joseph Garside, 51 years; William H. Garside, 60 years; John Garside, 54 years; and Alice J. Hiserman, 57 years; and that there is little probability, if any, that children will hereafter be born" to the above persons. The trial court ordered the sale to be made, and after due notice confirmed a sale to one E. W. Palmtag for $70,000. The court made full and complete findings

demonstrating that it was fully aware of all of the facts. It likewise protected the contingent remainder interests of the unborn children. By its decree, it required the referee to post a $5,000 bond conditioned to provide for the safe keeping of that portion of the proceeds of the sale in which the unborn children (the three living grandchildren who were defendants having filed waivers) might have an interest. The court, by its decree, then required the six children of Thomas Garside, Sr., each to file a bond in the sum of $1,500 conditioned that each of the six children "shall safely keep such a portion of his or her proportionate share of the proceeds realized from the said sale as may be necessary to protect the interests of any child or children to him or to her hereafter born . . . this Court reserving, by this judgment, the right to increase or decrease any one or more of the said bonds, according as the interests of such child or children hereafter to be born may require." All of the required bonds were filed.

It is admitted that, after the sale to Palmtag was thus confirmed, he did not pay over the $70,000 sale price, but immediately deeded to each of the six Garside children the respective parcels, "A," through "F," in which they had been given life estates by the decree of distribution in the estate of Thomas Garside, Sr. It is admitted that this partition suit was a friendly proceeding between the six children and their then living children, entered into for the purpose of permitting the six children of Thomas Garside, Sr., to acquire separate fee simple interests in their respective parcels. It is this partition decree and order of sale that appellant in action No. 20086 seeks to have vacated and set aside.

By virtue of the Palmtag transfers, parcel "F" was deeded to appellant's father in fee simple. Some time later, in the year 1921, appellant's father and mother conveyed parcel "F" to respondent, Andrew Tarp. The property was sold to Tarp for $500 an acre, a fair price. It was stipulated that Tarp had no actual notice of any irregularities in the Palmtag partition proceedings, and appellant admits in her briefs that there is nothing in the record of the partition proceedings that shows any irregularity, such irregularity, if any, only being ascertainable by going behind the records of the court.

Appellant was born to Thomas Garside, Jr., in 1924, several years after the transfer to Tarp. In superior court action 19923 she alleges some of the facts above recounted; claims to be a remainderman, under the decree of distribution in the

estate of Thomas Garside, Sr., in an undivided one-half interest in parcel "F"; alleges that Tarp claims to own the parcel in fee; and prays for a declaration of her rights in that parcel. Tarp answered and cross-complained. By the answer and amendment to the answer he averred that he received the property by conveyance from Thomas Garside, Jr., and his wife, and that his grantors were then the owners in fee of the premises. He also sets forth the facts of the partition proceeding and pleads that judgment as a bar, and averred that, in any event, he is a bona fide purchaser for value without notice of any claims of appellant. By the cross-complaint he requested that his title be quieted against the claims of appellant.

In superior court action 20086 appellant pleads her remainder interest under the decree of distribution in the Thomas Garside, Sr., estate; pleads the facts in reference to the partition proceeding, and then avers that the Palmtag bid was sham and no purchase price was paid by him; that the bid and sale were "sham and fraudulent"; that by such fraudulent sale it was intended to cut off her interest as a remainderman; that the interlocutory decree was secured by fraud and collusion of Thomas and William Garside; that they deceived the court; that the whole proceeding was fraudulently conceived and carried out to cut off her interest in the property; that the court acted in confirming the sale without knowledge that the bid was a sham. The answer of the Garsides admits that no cash was paid by Palmtag for the property, avers that the procedure was adopted on advice of counsel, and that they acted in good faith in reliance on such advice; denies in detail the allegations of fraud and collusion; denies concealing the true facts from the trial court; denies that the court confirmed the sale without knowledge of the true facts. The partition proceeding is pleaded as a bar. The answer of Tarp denies all the material allegations of the complaint, pleads the partition judgment as a bar and, in addition, sets up the defense that he is a bona fide purchaser for value without notice.

The trial court found the historical facts substantially as set out above, found that all the allegations in reference to fraud and concealment were untrue, found the facts in reference to the petition proceedings, and then found that "there was no actual fraud perpetrated upon the Court; that the parties thereto, through their attorneys and on their

advice, sought a remedy to which they thought they were entitled; that said parties informed the Court of all the facts within their knowledge and the Court knew fully the methods adopted and the procedure that the parties proposed to adopt and which they did follow in securing for the respective heirs of their father and mother the portion of the Garside ranch to which they believed they were entitled, and the Court knew at the time of confirmation of the sale to E. W. Palmtag, that said E. W. Palmtag did not actually pay or intend to pay any money for the propery, but did know that the actual consideration in the transaction was that said E. W. Palmtag would, after the confirmation of the sale to him, transfer to each of the Garside heirs then living a one-sixth of that acreage of the whole tract and that each one of said Garside heirs would execute a bond of $1500.00 to be affirmed by the Court as security for any possible afterborn issue; that the plaintiff was secured by that certain bond executed by Thomas Garside, Robert Garside, and William H. Garside and filed by Thomas Garside in the above entitled Court'' in the partition proceeding and pursuant to the decree in that case. It was further found ''that the Court had jurisdiction of all of the parties in interest in the Property and jurisdiction of afterborn children and to pass upon their interest in the property by virtue of the doctrine of virtual representation; that the Court had jurisdiction of the subject matter of the action; that the proceedings in said partition action are regular upon their face; that the cross-complainant, Andrew Tarp, purchased the property for a valuable consideration and had no notice of the fact that said E. W. Palmtag did not actually pay to the Referee the sum set forth in the order confirming the said sale in the said action for partition; . . .'' Based on these findings, which, under the rules heretofore mentioned, must be conclusively presumed to be supported by the evidence, the court determined that Tarp was the owner of parcel ''F,'' and that appellant has no remainder or other interest in the parcel, and entered its judgment accordingly.

In view of the findings of no fraud and full disclosure, and that Tarp was a bona fide purchaser for value without notice, the only possible issue open to discussion on this appeal is that the court in the partition proceeding had no jurisdiction over the unborn remaindermen. There may be grave doubt as to whether this point may be urged at all against Tarp, when the facts upon which it is based admittedly do not appear on

the face of the record, but in view of our conclusion on the jurisdictional question this point need not be decided.

Appellant urges that the court in the partition proceeding never acquired jurisdiction over her or over her interest in the property and for that reason the decree in that proceeding cannot affect her. This contention lacks merit. In the first place, under the law existing in 1920, when the court directed sale to Palmtag took place, the law permitted a life cotenant to secure partition and permitted the court to protect the contingent remainder interests in the property. Section 752 of the Code of Civil Procedure then provided: "When several cotenants own real property as joint tenants, or tenants in common, in which one or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein, and for a sale of such property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." Section 781 of the same code then read as follows: "In all cases of sales, when it appears that any person has a vested or contingent future right or estate in any of the property sold, the court must ascertain and settle the proportional value of such contingent or vested right or estate, and must direct such proportion of the proceeds of the sale to be invested, secured, or paid over, in such manner as to protect the rights and interests of the parties."

Under these sections there can be no doubt that the court in the partition proceeding had jurisdiction over the subject matter. It had power, upon a proper showing, to decree that the ranch should be sold and to order the proceeds distributed between the six Garside children, who were fee simple owners of one-half of the property and life tenants as to the other half, as long as it preserved the rights of possible afterborn remaindermen. This it did by requiring all of the children, including appellant's father, to post $1,500 bonds to protect the rights of such afterborn issue, and by retaining jurisdiction to increase the amount of such bonds as the interests of afterborn remaindermen might require. This was adequate protection for such afterborns, particularly in view of the ages of the six Garside children in 1920, making it unlikely that there would be any such afterborn issue.

The remaining question is whether the finding of the trial court in the instant case that the court in the partition

proceeding had jurisdiction over the person of appellant, then unborn, under the doctrine of "virtual representation" is sound in fact and in law. The rules applicable to the doctrine of virtual representation have long been recognized. The doctrine represents a well recognized exception to the general rule that no person is bound by a judgment or decree except parties or those who stand in privity with parties. The doctrine is not one of convenience only, but is one of practical necessity. It was discussed at length in the well-reasoned case of *County of Los Angeles* v. *Winans*, 13 Cal.App. 234 [109 P. 640]. The following comments appearing in that case are particularly applicable here: "The rule as to virtual representation is stated broadly by the supreme court, of the United States in *Miller* v. *Texas & Pacific R. R. Co.*, 132 U.S. [662] 672 [10 S.Ct. 206, 33 L.Ed. 487] . . . by recognizing the holding of Lord Redesdale in *Giffard* v. *Hort*, 1 Schoale & L. 386, as follows: 'Where all the parties are brought before the court that can be brought before it, and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive. It has been repeatedly determined that if there be tenant for life, remainder to his first son in tail, remainder over, and he is brought before the court *before he has issue,* the contingent remaindermen are barred. Courts of equity have determined on grounds of high°expediency that it is sufficient to bring before the court the first tenant in tail in being, and if there be no tenant in tail in being, the first person entitled to the inheritance, and if no such person, then the tenant for life.' . . . *Kent* v. *Church of St. Michael,* 136 N.Y. 10 [32 N.E. 704, 32 Am.St.Rep. 693] . . . uses the following language: 'Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand, not only for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place and are secured in some way for such persons.' " (Pp. 244-245.)

"The protection of a person whose property is brought into court by such representation is to be found in his right to

attack the decree on the ground of fraud or collusion in its procurement." (P. 246.)

"If the sole purpose of the appearance of a living remainderman in an action were to secure some advantage to himself, or merely to serve the convenience of the party whose title was being quieted against the unborn remaindermen, virtual representation could not be presumed to exist, and any judgment obtained by virtue of such pretended representation could be set aside on the ground of fraud or collusion when the unborn remainderman became capable of suing in his own right. . . . The interests of representative and represented must, however, be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each." (Pp. 248-249.) (See for a full discussion of the doctrine the annotation appearing in 120 A.L.R. 876.)

From the Winans case, and from the California cases postdating that case (*Mabry* v. *Scott,* 51 Cal.App.2d 245 [124 P.2d 659]; *Fallon* v. *Superior Court,* 33 Cal.App.2d 48 [90 P.2d 858]; *Curran* v. *Pecho Ranch & Stock Co.,* 95 Cal.App. 555 [273 P. 126]) it can be stated as a general rule that whether there has been a true and legal virtual representation depends upon the facts of each case, and if it appears that there has been such representation, and that the rights of unborns have been considered and preserved, the doctrine will apply. This is substantially the rule announced in the Restatement. (Restatement of Property, § 182.) In the instant case it must be kept in mind that the trial court has found that in the partition proceeding full disclosure was made to the trial court, and that there was no fraud. Those findings must be conclusively presumed to be supported. In the second place, three of the defendants in the partition proceeding were possessors of interests identical in nature with those now claimed by appellant, that is, three of such defendants were children of life tenants and entitled to contingent remainder interests identical with that claimed by appellant. These three children, in a very real sense, represented the class to which appellant belongs in that proceeding. In the third place, the trial court protected the interests of the unborn contingent remaindermen by requiring the referee to post a $5,000 bond, by requiring each life tenant to post a $1,500 bond, and by retaining jurisdiction to increase that bond if necessary. That was a reasonable protection under the circumstances. The full purchase price was fixed at

$70,000. No attack is made upon the reasonableness of that figure. Of that purchase price appellant's father was entitled to one-sixth, or $11,666.66. But appellant's contingent interest was in one-half of that amount (appellant's father owning the other one-half in fee simple) or $5,833.33. At that time (1920) her father, who is still alive, was 46 years of age, and there was not a strong likelihood of him having issue. While it is true that several years later he did have a child, and that child is appellant, it is also true that whatever interest appellant would now have in the property had it not been partitioned, would still be contingent, being dependent on her outliving her father. This being so, as conditions existed in 1920, the $1,500 bond was sufficient to protect the interests of any unborn child of Thomas Garside, Jr. There was no claim made in the court below that the $1,500 bond was not sufficient, nor does the record show that appellant has ever requested that that bond should now be increased. Appellant's rights, if any, in connection with that bond were not involved in either of the cases here on appeal. The issues now involved all revolve around appellant's claimed interest in the property now standing of record in the name of Tarp, a bona fide purchaser for value without notice. We agree with the trial court that appellant has no interest of any kind in that property.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.