[Civ. No. 15725. First Dist., Div. One. Mar. 4, 1954.]

ALTA P. WOGMAN et al., Respondents, v. WELLS FARGO BANK AND UNION TRUST COMPANY, as Trustee, Appellant.

Edward W. Rosston and Heller, Ehrman, White and McAuliffe for Appellant.

Gordon McKenzie and Ruth E. Bates for Respondents.

PETERS, P. J.—Alta P. Wogman, the only child of Hans Petersen, a deceased trustor, her husband Walfrid, and their adult child Vincent, brought this action in equity against

the trustee of the trust and the guardian *ad litem* for the unborn and unascertained heirs of Alta, to modify and/or terminate a trust created by the will of Hans Petersen, who died in 1928. Eggers, the guardian, filed an appearance, but in no other way participated in the proceedings. The trial court terminated the trust and ordered the corpus to be transferred, unconditionally, to Alta. The Wells Fargo Bank and Union Trust Company, the trustee of the trust, appeals. Eggers is not a party to this appeal.

When the testator died on July 11, 1928, he was 71 years of age, having executed his will in January of 1928. He was survived by his third wife Petra, then 58, by his daughter Alta, then 32, who was married to Walfrid. Alta and Walfrid had one child, Vincent, then 8 years of age. By the will the testator created a trust as to that portion of his estate that was his separate property. The value of the corpus of the trust estate at the time of the death of the testator was $29,000. At the time of trial (June of 1951) it was valued at $25,000.

The will provided that the trust was to last "for twenty-one (21) years from the date of my death and until the deaths of my wife, PETRA C. PETERSEN, of my daughter, ALTA PETERSEN WAGMAN, and of WALFRID M. WAGMAN, the husband of my daughter, Alta Petersen Wagman." It provided that the trust income should be disbursed as follows:

1. To pay $30 a month to Petra, during her life.

2. To pay the rest of the income (all of it upon the death of Petra) to his daughter Alta during her life.

3. If Alta died before the end of the trust to pay her share of the income to her children, and if she left no children, then to two designated sisters of the deceased. No express provision for the disposition of the corpus upon the termination of the trust was made in the will, although Alta was made residuary legatee. The trustee was not given any power to use any of the corpus for any purpose during the continuance of the trust.

The decree of final distribution was entered in September of 1929. No challenge was made by anyone of any of its terms. It distributed the corpus of the trust to appellant as trustee, generally provided for the purposes of the trust in language substantially similar to that used in the will, and provided for the period of duration and termination of the trust in the following language: "Upon the expiration of said period of twenty-one (21) years from July 11, 1928,

the date of the death of said Hans Petersen, deceased, or upon the death of his surviving wife, Petra C. Petersen, his daughter, Alta Petersen Wagman, and Walfrid M. Wagman, the husband of his daughter Alta Petersen Wagman, whichever shall be the longer, said Trust shall cease and determine and the Trust Estate then remaining in the hands of said Trustee shall vest in and go to the heirs at law of Alta Petersen Wagman, in accordance with the laws of Succession of the State of California then in force.''

Petra died in 1942, and the two sisters of the deceased named as alternate income beneficiaries to take if Alta died childless before the termination of the trust, died in 1928 and 1938, respectively.* The petition here involved was filed in 1950. At that time Alta was 55. Her son Vincent was 31, and was married, but childless. Thus, the only named income beneficiaries then alive were Alta and Vincent, and the only other income beneficiaries would be future children born to Alta who would share in the income if Alta predeceased Vincent or Walfrid. In addition, if Alta survives her husband and son and then dies, then a wholly new set of heirs at law, not necessarily unborn but not ascertainable until her death, would inherit the corpus.

At the trial the only witnesses, all called by respondents, were Alta, Vincent and the trust officer of appellant. Most of the evidence was directed towards showing the present financial condition of the Wogmans and the amount of income of the trust, respondents challenging the investment policies of the trustee. It was admitted that Alta and her husband are not destitute. Over the past four or five years they have averaged about $3,500 annually, including the income from the trust, which now runs to about $60 per month. Walfrid had been a farmer for some time, but for the six or seven years prior to trial he and his wife had been in the real estate business in Sebastopol, California. They do not own their own home, but do own an automobile. They wish to use a portion of the corpus to buy a home.

There is much evidence as to the investment policies of the trustee in relation to the corpus of this trust. These policies, and whether the trustee abused its powers, are

---

*These facts as to the deaths of Petra and the sisters are alleged in the petition here involved. These allegations are denied by the answer. There is no evidence in the record establishing these facts. The trial court found that these allegations were true. On this appeal both sides accept these findings. For the purposes of this appeal these facts will be accepted as true.

problems not involved on this appeal. The trust could not be terminated because of these matters, there being other less heroic remedies for such abuses, if they exist.

The trial court found that the will disclosed an intent on the part of the testator to protect his wife and daughter; that the wording of the will indicates that the trustor intended that the trust should continue for a maximum of 21 years; that no provision in the will was made for the vesting of the corpus; that Vincent and Walfrid have consented to the termination; that contingent beneficiaries are represented by a guardian *ad litem*; that the purposes of the trustor have been fulfilled; that it is in the best interests of all that the trust be terminated; that the trustee has had no interest in the trust since July 11, 1949, when the trust became void under section 715 of the Civil Code. The judgment decreed that the trust be terminated as of July 11, 1949, 21 years after the death of the testator, and the trustee was directed to transfer all of the corpus remaining to Alta.

From the findings it is quite apparent that the trial court was convinced, and so held, that under the terms of the will the testator had expressed an intent that the trust should exist for a maximum of 21 years, and that by terminating the trust as of July 11, 1949,* it was merely terminating the trust in accordance with its terms as set forth in the will. It is also clear that the trial court was also of the opinion, and so held, that if this was not the proper interpretation of the will, then the trust provision was invalid as a violation of the rule against remoteness of vesting contained in section 715 of the Civil Code. Both conclusions, in our opinion, are unsound.

Whether the testator expressed an intent that the trust should last but 21 years, must be ascertained primarily by interpreting the language used in the decree of distribution and not from the language used in the will. It is true that where the terms of the decree of distribution are ambiguous the will may be looked to in order to clarify the ambiguity. (*Moxley* v. *Title Ins. & Trust Co.*, 27 Cal.2d 457 [165 P.2d 15]; *Mitchell* v. *Bagot*, 48 Cal.App.2d 281 [119 P.2d 758].) But where the terms of the decree are clear, such terms control, regardless of the language of the will. Section 1021 of the Probate Code expressly provides that the decree of distribution "when it becomes final, is conclusive as to the rights of heirs,

---

*This was precisely 21 years from the death of the testator. The decree of termination was entered October 20, 1952.

devisees and legatees." In *Estate of Loring*, 29 Cal.2d 423 [175 P.2d 524], it was held that this provision includes a beneficiary under a testamentary trust.

In the instant case the decree of distribution is not ambiguous. In clear terms it is provided that the trust is to last for 21 years or until the death of the last survivor of three named individuals, whichever is the longest, at which time the corpus is to vest in the heirs at law of Alta. Thus, even if the will provided that the trust should terminate at the end of 21 years, the provisions of the decree would prevail. But the will does not so provide. It provides that the trust was to continue for 21 years from the death of the testator "and" until the deaths of the three named persons. The decree properly interpreted this provision.

■ The contention that, because the trust was to last for 21 years or the longer of three named lives in being, it violated the rule against restraints on alienation is equally unsound.

Section 715 of the Civil Code as it read at the time of the decree of distribution provided, so far as pertinent here:

" . . . the absolute power of alienation can not be suspended, by any limitation or condition whatever, for a longer period than as follows:

"1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or

"2. For a period not to exceed twenty-five years from the time of the creation of the suspension."

Respondents' theory is that because the instant trust is to last for lives in being or 21 years, whichever turns out to be the longest, the section has been violated. It is argued that, while the section provides for alternatives, the choice between such alternatives must be made at the time the trust is created, and cannot await the determination of which alternative in fact will permit the trust to last the longer period. There is no warrant for such an interpretation either in the language of the section or in the cases interpreting it. Cases such as *Estate of Steele*, 124 Cal. 533 [57 P. 564], *Estate of Whitney*, 176 Cal. 12 [167 P. 399], and *In re Walkerly*, 108 Cal. 627 [41 P. 772, 49 Am.St.Rep. 97], involved interpretations of section 715 as it read prior to its amendment in 1917. At the time these cases were decided the statute contained no alternative, simply providing that the suspension of alienation could not be made for longer than lives in being. They held, quite properly, that if the trust provided that the power of alienation under any possibility could be suspended beyond

lives in being it was invalid. You could not wait to see what factually might occur. *Estate of Maltman,* 195 Cal. 643 [234 P. 898], applied the same rule after the 25-year alternative was added to the section. It too held that if, under the terms of the trust, by any possibility, the period of alienation could be suspended beyond the longest period set forth in the statute, the trust was invalid. The courts cannot wait and see what set of facts actually occurs before determining the validity of the trust. ■ Such validity must be determined as of the date of the testator's death. These principles are well settled. But respondents contend that not only must the validity of the trust be determined as of the death of the testator, but also that the testator must choose between the two alternatives set forth in the section and make such choice effective as of the time of his death. He cannot, according to respondents, provide that the trust shall last for whichever period turns out to be the longest. This is a strained unnatural interpretation of the section. While validity must be determined at the time of death, in determining validity no reason exists why a trust should be invalidated where it does not violate the statute but simply provides for the longest of the two alternatives set forth in the statute. ■ The purpose of section 715 is not to trap testators, nor is the section punitive in nature. (*Estate of Micheletti,* 24 Cal.2d 904 [151 P.2d 833] ; *Estate of Sahlender,* 89 Cal.App.2d 329 [201 P.2d 69].) The statute sets up two measures. If the restraint may last for any time in excess of these periods, it is invalid. If the restraint does not last longer than the longest of the two periods, it is not too long, and is valid. ■ The obvious purpose of the statute is to prevent the suspension of alienation beyond lives in being or 25 years. If, as here, the trust must terminate within either of the two periods specified in the section, it does not violate that policy, even though it provides that such trust is to last for the longer of the two periods. This interpretation is implied in *Estate of Sahlender,* 89 Cal.App.2d 329 [201 P.2d 69], and *Estate of McCollum,* 43 Cal.App.2d 313 [110 P.2d 721], and is in accordance with the letter and spirit of the statute.

Moreover, even if the trust did violate the section (which it does not), that issue cannot be litigated at this late date. The decree of distribution was entered in 1929, and for many years has been final. ■ That decree of distribution conclusively established not only the interpretation of the terms of the trust, but also its validity. (*Crew v. Pratt,* 119 Cal.

139 [51 P. 38] ; *Matter of Trust of Trescony,* 119 Cal. 568
[51 P. 951] ; *Smith* v. *Vandepeer,* 3 Cal.App. 300 [85 P. 136] ;
*Estate of Loring,* 29 Cal.2d 423 [175 P.2d 524] ; see cases
collected 11B Cal.Jur. p. 796, § 1296.) While it is true that
the case of *Wharton* v. *Mollinet,* 103 Cal.App.2d 710 [229
P.2d 861], holds that the portion of a final decree creating an
estate in conflict with the statutes is a nullity and may be
attacked at any time, and so is contrary to the above cases,
it is worthy of mention that no hearing in the Supreme Court
was asked in that case, nor does the opinion cite or mention
*Crew* v. *Pratt* or any of the numerous cases following it.
Under such circumstances it is doubtful whether that case
states sound law. If *Crew* v. *Pratt* and the cases following
it are to be overruled, such should be done directly and not
indirectly, and should be done by the Supreme Court and not
by an appellate court.

The next question is whether the trust was properly termi-
nated for any of the other reasons set forth in the findings.
Both sides agree that a court of equity, under proper
circumstances, may terminate a trust in advance of the time
fixed by the trust instrument. Generally speaking, such
termination will be .permitted where the purpose of the trust
has been fulfilled, where such termination will help to effec-
tuate the trustor's general intent, where there has been un-
foreseen and material changes in circumstances, and where all
the beneficiaries consent to such termination. (See cases col-
lected 25 Cal.Jur. p. 293, § 150.)

Respondents argue that the purpose of the trust has been
fulfilled and that termination will carry out the testator's
intent. It is urged that under the provisions of the will
the testator disclosed a primary purpose and intent to pro-
vide for the financial well being of Alta. Then, basing their
argument on the erroneous interpretation of the will and the
trust found in the findings and already discussed, it is
argued that the testator intended the trust to last for a maxi-
mum of 21 years and so contemplated that the trust might
be terminated within Alta's lifetime. This claimed purpose
and intent cannot be spelled out of the will or decree. Cer-
tainly, under the decree of distribution the intent of the
testator and the purpose of the trust were expressed to be
that Alta was to be an income beneficiary, but in no event
was she to get the corpus, which was to go to her heirs at law
upon her death. Under the terms of either the will or the
decree, the only provision made in the trust for Alta is the

gift of income for her life, with alternative gifts over if Alta should die before the termination of the trust, and Alta's life is made one of the measures for the termination of the trust in that in no event was the trust to end before her death. The testator wanted Alta to have an assured income for life. ██ He certainly did not intend that she should have the corpus. This is made crystal clear by the fact that the testator did not see fit to confer on the trustee the power to invade the corpus even in the case of great need on the part of Alta. Thus, the termination of this trust and the transfer of the corpus to Alta not only would not carry out the purpose of the trust and effectuate the trustor's intent, but would do violence to them.

██ Moreover, to authorize a court of equity to terminate a trust before the period provided in the trust has expired a minimum requirement is that all of the beneficiaries affected must consent. Alta, Walfrid and Vincent join in this action requesting a termination, so, of course, consent to it. But other possible beneficiaries have an interest. Upon Alta's death the corpus, pursuant to the terms of the decree of distribution, is to go to the heirs at law of Alta, a presently unascertainable group who, in this state, have an interest in the corpus of the trust by purchase and not by descent. (Civ. Code, § 779.) Moreover, the decree provides that if Alta predeceases Walfrid and Vincent, certainly a possible contingency, the income is to go to her children. While Alta has now only one child, Vincent, and he has consented to the termination, and while she is now nearly 58, so that the probability of having any more children is extremely remote (*Estate of Sahlender*, 89 Cal.App.2d 329, 354 [201 P.2d 69]), such a legal possibility exists. Those possible unborn children have an interest in the income.

Jurisdiction over these unborn and unascertained heirs was secured by the appointment of one Eggers as their guardian *ad litem*. He is made a defendant in this proceeding. His appointment as guardian was made pursuant to the provisions of section 373.5 of the Code of Civil Procedure, first added to our statutory law in 1949. It provides: "If under the terms of a written instrument, or otherwise, a person or persons of a designated class who are not ascertained or who are not in being, may be or may become legally or equitably interested in any property, real or personal, the court in which any action, petition or proceeding of any kind relative to or

affecting such property is pending, may, upon the representation of any party thereto, or of any person interested, appoint a suitable person to appear and act therein as guardian ad litem of such person or persons not ascertained or not in being; and the judgment, order or decree in such proceedings, made after such appointment, shall be conclusive upon all persons for whom such guardian ad litem was appointed. . . ." This statute codified the rule of "virtual representation" that has been recognized in this state since at least 1910. (*County of Los Angeles* v. *Winans*, 13 Cal. App. 234 [109 P. 640]; see good discussion of the cases in *Mabry* v. *Scott*, 51 Cal.App.2d 245 [124 P.2d 659].) Under that rule the appellate courts were required to examine the facts to see whether the persons not represented in court were actually represented by their guardian, or whether his appearance was a sham or the result of collusion or fraud. In *Garside* v. *Garside*, 80 Cal.App.2d 318, 328 [181 P.2d 665], this limitation on the rule as it existed prior to 1949 was expressed as follows: "From the Winans case, and from the California cases post-dating that case [citing them] it can be stated as a general rule that whether there has been a true and legal virtual representation depends upon the facts of each case, and if it appears that there has been such representation, and that the rights of unborns have been considered and preserved, the doctrine will apply. This is substantially the rule announced in the Restatement. (Restatement of Property, § 182.)"

While the statute does not set forth this limitation in express language, it does contain language from which such limitation should be implied. It requires the court to appoint "a suitable person to appear and *act*" as guardian for those not present. Note that the guardian is required not only to "appear," but to "act" for the protection of those not present. It is incumbent on the trial court in the first instance, and upon the appellate court in the second, to determine whether such guardian has in fact acted to protect his wards. ▮▮▮▮ It follows that the rule in existence before the adoption of the statute, which rule required the appellate court to examine the record to see if those not present have in fact been truly represented, is still the law of this state.

What does the record show in this regard? It shows that on October 18, 1950, Eggers, at his own request, petitioned to be appointed guardian *ad litem* for the unborn and unascertained heirs in order to represent them in the pending

termination proceeding. On the same day he was so appointed. He was then, in the amended petition filed the same day, made a defendant. The termination proceeding went to trial on June 27, 1951. On that day Eggers, as guardian *ad litem*, filed a written appearance, an admission of service, and a consent that the cause could proceed to trial. That is all the record shows. So far as the record shows, neither Eggers nor his counsel participated in any way in the trial. He has not joined in the appeal.

It is at once apparent that Eggers did not expressly consent to the termination of the trust. (For the legal effect of lack of consent see *Estate of Van Deusen*, 30 Cal.2d 285 [182 P.2d 565].) Nor was his formal default taken. It is also apparent, if his failure to object amounted to an implied consent, that in no true sense were the unborn and unascertained heirs in fact represented. ■ While the guardian did appear on their behalf, he did not "act" on their behalf. Yet the effect of the trial court's decree is to deprive some of these persons from ultimately getting the corpus of the trust. There was no true representation of these unborn and unascertained heirs in this case. This alone would require a reversal.

■ Nor do we think that the claimed change in circumstances here shown to exist justified the court, had the law otherwise been followed, in terminating the trust. The basic changes that have occurred since the decree of distribution are that it is claimed that the corpus has produced a smaller income than anticipated (although no showing was made as to what income was anticipated), and the testator's wife and his two sisters, alternative beneficiaries, have died. Alta is now middle aged, is the sole beneficiary now receiving the income, and is unable to buy a home, which she desires to do. While the income from the trust has decreased, the cost of living has increased. Such facts do not warrant the exercise of the power of terminating a trust contrary to the trust provisions in a case where such termination would, as already held, violate the main purpose of the trust and the intent of the testator. (See *Estate of Van Deusen*, 30 Cal.2d 285 [182 P.2d 565].)

The order appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 28, 1954.