[No. 30129.   Department One.   April 11, 1947.]

WILLIS C. DONNELLY, *Respondent*, v. NATIONAL BANK OF WASHINGTON *et al., Appellants.*[1]

[1]Reported in 179 P. (2d) 333.

*Metzger, Blair, Gardner & Boldt* and *Scott, Langhorne & McGavick,* for appellants.

*Eisenhower, Hunter & Ramsdell* and *Gershom C. Rowland,* for respondent.

MILLARD, J.—D. I. Cornell died a resident of Pierce county April 4, 1940. In accordance with the terms of his will, executed October 23, 1939, the National Bank of Washington was the appointed and qualified trustee of the trust set forth in that will. Betty H. Montgomery, Willis C. Donnelly, and two others were the residuary beneficiaries of the testator. The pertinent provision of the trust instrument reads as follows:

"Upon the exhaustion of said life insurance trust, to pay from the net income of the trust estate to my grandson, WILLIS C. DONNELLY, sometimes called and known as WILLIS C. RIGGS, the sum of $750.00 per year for his support and to enable him to complete his collegiate and professional education, such payments to continue so long as my said grandson is a student in good standing at some recognized, degree granting college, University, or post-graduate school, but in no event beyond December 31, 1945. This provision for my grandson is intended to supplement the like provision for his benefit in the life insurance trust above referred to, so that my said grandson may, if the needs of his support and education require, receive the sum of $750.00 per year until December 31, 1945, if he continues until that time to pursue in good standing his collegiate and professional education."

Willis C. Donnelly, grandson of the testator, entered the University of Washington school of pre-law in 1938. In December, 1941, he received from the United States army a notice of induction. He graduated from the University of Washington in August, 1942, having then completed one year of work in law school. During his course of studies at the University of Washington, the amount of money provided in the above-quoted paragraph of the will in question was received by the grandson from the trustee bank. Subsequent to his graduation from college, the young man was ordered to active duty with the United

States marine corps, from which he was not discharged until April 10, 1946, at which time Donnelly requested the trustee bank to resume payments to him under the above-quoted provision of the will, despite the fact that the time limit upon such payment—December 31, 1945—had passed. The trustee refused to make the payments requested on the ground that such payments were contrary to the clear terms of the will.

An action was commenced by Donnelly to require the trustee bank to continue to make payments to him under the terms of the trust for an additional period of three years. Trial of the cause to the court resulted in entry of decree requiring the trustee to make payments to plaintiff for his support and education for an additional period of three years from date of entry, August 23, 1946, of the decree. The trustee bank and certain beneficiaries under the will appealed.

Counsel for appellants contend that the only provision, quoted above, of the will of respondent's grandfather providing for the payment of $750 annually to respondent as long as he is a student in good standing in some recognized degree-granting college or post-graduate school, expressly restricts the payments to a date certain; that is, the grandson is to receive $750 annually, but in no event beyond December 31, 1945. That language, it is insisted, is in no way ambiguous, therefore the trial court erred in admitting parol testimony to vary the terms of the will, which evidence was admitted to show that the testator did not intend that the time limit in the will should apply.

Appellants invoke the rule that parol evidence is not admissible to show that the testator meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make but did not in fact make, which rule is applied especially where the language of a will is plain and unambiguous. See 69 C. J. 134; 28 R. C. L. 268, § 243 *et seq.; In re McNulta's Estate,* 168 Wash. 397, 12 P. (2d) 389; *Winner v. Carroll,* 169 Wash. 208, 13 P. (2d) 450.

It is argued by appellants that, under the terms of the will in the case at bar, there is no ambiguity, hence there is nothing to construe, and parol testimony should not have been admitted.

■ Counsel for respondent contend that a court of equity has the power to permit or direct a trustee to deviate from the terms of a trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat the accomplishment of the purpose of the trust.

"The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust." Restatement of the Law, Trusts, 415, § 167.

This principle is affirmed in Scott on Trusts. The pertinent section (2 Scott on Trusts 842, § 167) reads as follows:

"In all these cases the court in conferring power upon the trustee is attempting to prevent the failure or substantial impairment of the purpose for which the settlor created a trust. It is permitting the trustee to do, not what the settlor intended to permit him to do, but what it thinks the settlor would have intended to permit if he had known of or anticipated the circumstances which have happened. Even though the settlor has expressly forbidden what the court permits to be done, the theory is that he would not have forbidden it, but on the contrary would have authorized it, if he had known of or anticipated the circumstances. In so doing the court is not interpreting the terms of the trust, but is permitting a deviation from them in order to carry out the purpose of the trust."

*Adams v. Cook,* 15 Cal. (2d) 352, 101 P. (2d) 484, follows the foregoing rule. In that case, certain real property was conveyed in trust to be sold at a price fixed in the trust instrument. Active duties relating to the management of the trust property were conferred upon the trustee. The beneficiaries made application for equitable relief in the

administration of the property following the discovery of oil thereon, which circumstance materially affected the property's value, which was not contemplated at the time of the creation of the trust. In granting to the trustee the power to sell at a price other than the one specified in the trust instrument, the court said:

"Where the primary purpose of the trust would not be accomplished by a strict adherence to the terms of the declaration of trust and that when it is . . . shown . . . that the benefits and advantages which the trustors desired to confer upon the beneficiaries would not accrue to them by 'a slavish adherence to the terms of the trust', the court may modify the terms of the trust to accomplish the real intent and purpose of the trustors."

In *Young v. Young,* 255 Mich. 173, 237 N. W. 535, 77 A. L. R. 963, a hotel building, which was the corpus of the trust and had been specifically restricted by the trust instrument from being sold or mortgaged within a period of ten years, was destroyed by fire. A court of equity in that case allowed the trustee to sell the property and reinvest the proceeds without waiting for the ten-year period to elapse. In the course of its opinion the court said:

"Frequently, through an over-abundance of caution, accompanied by a lack of foresight to provide for contingencies, the testator directs that his hand, though stilled by death, shall continue to conduct and control his property. When untoward and unforeseen conditions and exigencies arise, has a court of equity the inherent power to take into consideration not only what would have been the wishes of the testator, but also what will safeguard the trust fund for the heirs? Under the circumstances presented in this case, may the court decree such changes as common sense and good reason dictate? A long line of cases has established the principle that, when such an unusual exigency arises in regard to the method of handling the property or the corpus of the trust fund, it is the right and duty of a court of equity to authorize such changes."

In the course of the foregoing opinion, the supreme court of Michigan called attention to the case of *Curtiss v. Brown,* 29 Ill. 201, an excerpt from which was quoted as follows:

" 'Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. . . . From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery.' "

*Bennett v. Nashville Trust Co.*, 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N.S.) 43, involved a trust in which the beneficiaries were not to receive certain benefits until the expiration of a certain time limit. In that case, the court permitted the trustee to expend funds for such beneficiaries prior to the time limit fixed by the trust instrument. It will be noted in *Bennett v. Nashville Trust Co., supra,* that the necessity to which the courts so frequently refer in these types of cases is not the necessity of providing for the beneficiaries but the necessity of varying the terms of the trust in order to give effect to the intention of the testator.

In the case at bar, the court, sitting as a court of equity, occupies the place of the trust creator and does, as stated in *Bennett v. Nashville Trust Co., supra,* what it conceives would have been done by the creator had he foreseen the situation of his beneficiary in a substitution of another course in order to the completer realization of the settlor's purposed bounty.

As stated in *Bennett v. Nashville Trust Co., supra,*

"If this be not competent to be done by a court of equity, it is not difficult to contemplate a situation in which the testator's purposed benefit would be defeated entirely."

The facts of the case at bar fall squarely within the principle announced above and as stated in *Bennett v. Nashville Trust Co., supra,* "the principle involved commends itself to the court as consonant with justice and the development of an equity system along lines of sound polity." The settlor expressed his intention in paragraph

2 (c) of the will quoted above to give to respondent $750 annually for his support and to enable him to complete his collegiate and professional education.

Clearly, it was the intention of the settlor that the specified amount be paid to respondent to permit him to finish his law course. The time limit on the payments at the time the will was executed gave to respondent more than enough time to complete his law school studies. The time was limited to December 31, 1945, which time limit detracts in no way from the settlor's purpose toward his beneficiary. That respondent would be compelled to leave his studies for a period in excess of three years to serve in the armed forces of our country, was not foreseen by the settlor, nor was any provision made therefor in the trust instrument. It is unthinkable that a settlor who regarded his grandson as a son would have so restricted the time on the education payments as to prevent the boy, because he was summoned from his school to the armed forces of our country, from completing his education. The only reasonable conclusion is that the settlor neither foresaw World War II nor anticipated that respondent would be required to leave his schooling unfinished and serve for more than three years in the armed forces of his country.

If it constituted error to admit oral testimony to permit the court to understand the position of the testator at the time he made his will, it was harmless error, as that testimony only confirmed the settlor's statements which were apparent from the language of the will. All testimony except that which discloses the testator's position and relation to respondent prior to the time the testator executed his will, was excluded by the trial court. The court stated that the testimony was not necessary to enable it to decide the questions presented.

No error was committed in admitting the testimony. We held in *In re Harper's Estate*, 168 Wash. 98, 10 P. (2d) 991, 15 P. (2d) 1119, that:

"In determining the meaning to be given to the words used in a will, extrinsic evidence of the surrounding facts and circumstances may be considered, not for the purpose

of proving intention as an independent fact, but as an aid to a right understanding of the language that has been used."

The judgment is affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and ABEL, JJ., concur.

