Cheshire,  } No. 4112.
July 1, 1952. }

JOHN K. COLONY & a.

*v.*

JOHN J. COLONY & a. *Trustees.*

*James I. Hines, A. James Casner* and *Paul V. Rutledge* of Massachusetts (*Mr. Casner* orally), for Paul V. Rutledge, adm'r *d. b. n., w. w. a.* of Kate Colony Frye.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Godfrey* orally), for John J. Colony, Jr. and Ernest W. Johnson, co-executors of will of George T. Colony.

*Hamblett, Griffith, Moran & Hamblett* (*Mr. Charles K. Hamblett* orally), for Ethel M. Aspin, Doris M. Hall, Marjorie R. McQuesten, Edna D. Winslow and Dorothy A. Plett.

*Howard B. Lane, Joseph A. Locke* and *Roger P. Stokey of* Massachusetts (*Mr. Stokey* and *Mr. Lane* orally), for Murray S. Colony, James Colony, Frank H. Colony and Eleanor W. Colony.

*McLane, Davis, Carleton & Graf, Stanley M. Brown* and *Tyler & Reynolds* of Massachusetts, *Choate, Hall & Stewart* of Massachusetts (*Mr. Brown* orally), for Karl Adams and Katherine Adams Heard.

*Devine & Millimet* (*Mr. Millimet* orally), for Louise Colony Johnson.

*William H. Watson* and *William H. Watson, Jr.* (*Mr. Wm. H. Watson* orally), for Wm. H. Watson as guardian *ad litem* and as attorney for Davis Ellsworth Clarkson.

*Arwe & Arwe* (*Mr. Henry C. Arwe* orally), for Laurence D. Colony, Jr.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for John J. Colony and Horatio Colony.

*Howard W. Robbins, James D. Dow* and *Howard S. Whiteside* all of Massachusetts (*Mr. Dow* orally), for John K. Colony and Donald G. Colony.

*Philip H. Faulkner* and *N. Michael Plaut* (*Mr. Plaut* orally), for Alfred T. Colony.

*Homer S. Bradley,* guardian *ad litem* for the allowance of trustees' account, *pro se,* furnished no brief.

*Jarlath Slattery,* guardian *ad litem* against the allowance of trustees' account, *pro se,* furnished no brief.

*Arthur Olson,* for Ruth Cutter, Harriette M. Creedon, Ruby Bills Fuller and Elizabeth Kennedy, furnished no brief.

*Edgar L. Ryerson* of Massachusetts, for Stuart C. Hymers, adm'r of Mary L. Hymer's estate.

*Roy M. Pickard,* for trustees, furnished no brief.

LAMPRON, J. The main issues before us for decision are the following, viz; (1) Julia, the testator's daughter, having died "leaving no children or lineal descendants" who is entitled to the five thousand dollar bequests made to testator's brothers Henry and George Colony; (2) Julia having so died and none of testator's brothers Timothy, Henry, George and Horatio being alive at her decease, as of what time are their heirs and those of Alfred (a

brother already deceased at the making of the will) to whom the residue is given to be determined; (3) if their heirs are to be determined as of the date of death of Julia, there being then no children or lineal descendants of the brother Timothy, although there are of all the other brothers, (a) is the residue to be distributed *per capita* to the heirs of the five brothers as a class or (b) is it to be divided into four equal shares and distributed equally among the lineal descendants of the four brothers having same or (c) is the residue to be nevertheless divided into five equal shares and Timothy's share distributed to his heirs according to R. L., c. 360, s. 1 III; (4) as to Henry's share where there are seven grandchildren and two great grandchildren, the latter two issue of a deceased grandchild, all being the lineal descendants of four of Henry's children, is the share to be divided into eight or four equal parts.

All the parties are in agreement that, except for the last issue which involves for the most part the interpretation of R. L., c. 360, s. 1, these questions are to be resolved by a determination of the testator's intent relative thereto gathered from his will read in the light of the competent evidence bearing upon its interpretation. *Osgood* v. *Vivada,* 94 N. H. 222, 224; *Amoskeag Trust Co.* v. *Haskell,* 96 N. H. 89. As to what the testator intended by his will there is, however, no such unanimity among them.

The task of determining his intent is not an easy one as plausible and able arguments have been presented for different views. No useful purpose would be served in a seriate consideration of the merits and fallacies of these arguments. It is sufficient to say that they were all duly considered in arriving at our decision and only those will be mentioned in the opinion as are needed to set forth our conclusions.

The gifts of $5,000 each to Henry and George Colony were not intended by the testator to be subject to the requirement that the legatees survive Julia. The will contained no words expressly evidencing such an intention. *Cole* v. *Society,* 64 N. H. 445, 457; *Dana* v. *Sanborn,* 70 N. H. 152; *Stearns* v. *Matthews,* 94 N. H. 435, 437. And the fact that their gifts were postponed as to enjoyment in possession to a date subsequent to the death of the testator did not in and of itself justify an inference that no gift was intended if they failed to survive to the end of the postponed period. *Holmes* v. *Alexander,* 82 N. H. 380, 386; *Osgood* v. *Vivada,* 94 N. H. 222, 225. Nor could such an inference be drawn from the express condition attached to their gift that Julia "shall die leaving no children

or lineal descendants." Restatement, Property, s. 261.

On the other hand the fact that the bequest to the children or lineal descendants of Julia which immediately precedes their gift, and that of the residue to Timothy, Henry, George and Horatio which immediately follows it, are both expressly made subject to the condition that the beneficiaries be living at the time of distribution, which condition is absent in the gifts to Henry and George, is a strong indication that the testator did not intend to attach the condition of survival to their legacy. Their bequests should therefore be distributed to their respective legal representatives. *Upton* v. *White*, 92 N. H. 221, 226; *Stearns* v. *Matthews, supra*, 438.

The testator having died in 1883 and the life tenant, his daughter Julia, on January 5, 1950, without ever having had children, and testator's brothers all having predeceased her, we now consider that portion of article "Fifth" of the will of John E. Colony which reads: "But if my said daughter shall die leaving no children or lineal descendants . . . the balance thereof I direct to be divided into five equal shares—and one share each to be given & paid over to my brothers Timothy Colony, Henry Colony, George D. Colony & Horatio Colony if living, otherwise to their heirs . . . ."

What is the meaning of the word "heirs" as used by the testator in the above quoted portion of his will?

Argument is made that the word "heirs" has an ordinary well-accepted legal meaning, viz: those persons who succeed to a decedent's property at his death if he dies intestate (*Simes* v. *Ward*, 78 N. H. 533, 534), and that in the absence of appropriate evidence there is no reason to assume that a testator has used the word "heirs" in other than its ordinary meaning. It is further argued that there is no evidence in this case that the testator intended any other use; that consequently the word "heirs" in the above clause of the will "otherwise to their heirs" was intended by him to mean those persons who, at the time of the death of each brother or at the time of death of the testator, as to those brothers who predeceased him (53 Harv. L. Rev. 207, 235), were entitled to inherit the property of the designated brother under New Hampshire law in force at that time.

Those who oppose this view argue that there is sufficient evidence to show that the testator intended to designate by the word "heirs" those persons who would have succeeded to each brother's property if he had died intestate at the termination of the life estate, namely, at Julia's death.

Under our decisions there is no presumption either way on this question. It is determined in each case by ascertaining the testator's intent by such competent evidence as tends to place the court in his position. *Burpee* v. *Pickard,* 94 N. H. 307; *Amoskeag Trust Co.* v. *Haskell, supra,* 91. And cases differ so widely in their facts that little aid can be derived from them in attempting to apply their law to the facts of a particular case. *Harris* v. *Ingalls,* 74 N. H. 339, 342; *Remick* v. *Merrill,* 80 N. H. 225, 227; *Rogers* v. *Scagliotti,* 96 N. H. 134, 135.

After giving careful consideration to all the factors involved, we are of the opinion that, when the testator used the words "otherwise to their heirs" in the fifth clause of his will, he intended to have the heirs of his respective brothers determined at the time when his "said daughter [Julia] shall die leaving no children or lineal descendants," on January 5, 1950, as the events turned out.

It seems to us that the wording of the fifth clause has overtones of futurity, viz; "And upon the decease of my said daughter"; "to the children or lineal descendants . . . then living, if any there shall be"; "if living." This language indicates to us that the testator intended to postpone selection of the remaindermen till Julia's death. *Cf. Romprey* v. *Brothers,* 95 N. H. 258. We arrived at this conclusion not by applying rules of law (*Amoskeag Trust Co.* v. *Haskell, supra*) or canons of construction (*Redman* v. *Ring,* 94 N. H. 195, 197) to his words or because he used certain technical terms (*Osgood* v. *Vivada,* 94 N. H. 222, 224) but merely by trying under all the circumstances to place ourselves in the position of the testator.

We think that even though the words "living at the decease of my said daughter" are absent after the phrase "otherwise to their heirs" the situation existing at the time he drew his will indicates an intention on the part of John E. Colony to benefit persons living at the time of distribution. When he drew his will his daughter Julia was 7 years of age, his brother Timothy 59, George 56, Henry 54, and Horatio 42. His brother Alfred had died leaving a widow and three children, 18, 12 and 5 years old. He had eighteen nephews and nieces ranging in age from 5 to 37 years, only two being younger than Julia. All the nephews and nieces who survived him were living when he executed his will and no child was born to any of his brothers thereafter.

If he had intended to limit these remainders to the heirs of his brothers determined as of the date of his death, he could have so

indicated by designating the then heirs of Alfred by name; he could also have made a codicil to his will after Timothy's death to designate his heirs by name as they were then known to him. As a matter of fact had he intended to grant remainders which were to vest early he could have named all of his nephews and nieces in his will. His failure so to do indicates to us a realization on his part that the final distribution might be in the distant future (*Holmes* v. *Alexander*, 82 N. H. 380, 383; *Romprey* v. *Brothers, supra*, 261) and he was content to have the heirs of his brothers determined as of the time for distribution at Julia's death.

No worthwhile purpose would be accomplished by expanding on the other arguments advanced for determining the heirs as of Julia's death such as (1) by doing otherwise, seventeen of the eighteen children of the brothers having predeceased Julia, it would be necessary to trace the interest of seventeen of them through their estates and further through the estates of any deceased successors in title (*Crockett* v. *Robinson*, 46 N. H. 454, 458; *Remick* v. *Merrill*, 80 N. H. 225, 229; *Cowan* v. *Cowan*, 90 N. H. 198, 201); (2) if there was early vesting a substantial part of the estate would go to non-Colonys contrary to testator's intent to provide for "proper maintenance of family position."

Having determined that the heirs of each of the five brothers who are to take the residue are to be determined as of January 5, 1950, the date of Julia's death, we now turn our attention to the method of distribution. Here again our problem is to determine by a balance of probabilities the intent of John E. Colony in that respect. *Romprey* v. *Brothers, supra*, 260.

And as stated at the beginning of this opinion different solutions have been proposed by the parties. One view is that the testator was more interested in the Colony family and its tradition than in particular individuals of that family. He therefore had no preference among his many nephews and nieces, and grandnephews and nieces some born, some unborn. Such a man with equal feelings towards his relatives would want equal treatment of them. This result can only be accomplished by treating all of the heirs of his brothers as a class and distributing the residue *per capita* among them, regardless of their degree of relationship.

It has been argued by others that it is true that equality of treatment was intended by the testator as between the heirs of his brothers if all of the brothers died before the life estate terminated, but he intended those heirs to be only the heirs of the body and

descendants of each of his brothers. Timothy having no lineal descendants the testator did not intend that his collateral heirs take but rather that the remainder be divided into as many equal shares as there were lineal descendants of full brothers, each such brother's descendants being considered as a class substituted for the brother.

The final view advanced is that the testator intended the residue to be divided into five equal shares, each share to be distributed to those persons who were the heirs of a particular brother on the date of the death of Julia, January 5, 1950, as determined by the statute of descent and distribution in force on that date, to be distributed to them in accordance with the provisions of that statute. We agree with that view.

The language of the will itself, in our judgment, is a strong indication in that direction, viz; "and the balance thereof I direct to be divided into five equal shares—and one share each to be given & paid over to my brothers Timothy Colony, Henry Colony, George D. Colony & Horatio Colony if living, otherwise to their heirs—and one share to the heirs of my late brother Alfred T. Colony, deceased." There would be no purpose in directing that his estate be divided into five equal shares unless he intended to provide separate shares for the five branches of his family. This clause, read as a whole, indicates the testator's desire to keep each brother's share intact for such brother or for such brother's heirs. The words "equal" and "one share each" clearly show this intention and the fact that he expressly left "one share to the heirs of my late brother, Alfred T. Colony, deceased" is further confirmation of his desire that in case any of the other brothers died before the date of distribution his one fifth share was to go to his heirs. *McLane* v. *Crosby*, 77 N. H. 596 (299 Briefs & Cases 393).

Also if the testator had intended to have only the lineal descendants of his brothers share the residue instead of those who would have succeeded to each brother's share if the brother had died intestate as to that part of his estate (*Simes* v. *Ward*, 78 N. H. 533, 534), he would not have used the word "heirs" but the words "children or lineal descendants" as he did twice in this same clause. *Souhegan National Bank* v. *Kenison*, 92 N. H. 117, 119; *Bedell* v. *Colby*, 94 N. H. 384, 386.

We now direct our attention to the problem, previously mentioned, involving the interpretation of our statute of descent and distribution (R. L., c. 360, ss. 1, 6) which interests particularly

the Henry Colony line. To repeat it, at Julia's death the living lineal descendants of Henry consisted of seven grandchildren and two great grandchildren, the latter two issue of a deceased grandchild, all being the lineal descendants of four of Henry's children. It is contended by some that this share is to be divided into four parts each to be distributed equally among the living lineal descendants of each child of Henry because the inheritance should be *per stirpes* and the grandchildren and great grandchildren inherit as representatives of each *stirpes*. Others maintain that there being seven grandchildren and the representatives of an eighth grandchild, deceased, the grandchildren being all in an equal degree of kinship to the deceased ancestor Henry, the division should be *per capita* and each of the seven grandchildren should take an equal share and the eighth share should be divided equally between the two great grandchildren as representatives of their deceased parent.

An able and well documented argument has been made to the effect that the rule of taking *per capita* among relatives of the same degree applies only in situations involving next of kin and not where we are dealing with lineal descendants and the right of representation. In the latter event it is argued lineal descendants, however remote, never inherit as next of kin and always inherit *per stirpes*. 22 & 23 Charles II, *c.* 10; 118th Novel, Cooper's Justinian (3d *ed.*) 393. See *Kelsey* v. *Hardy,* 20 N. H. 479; Smith, N. H. Reports, 447.

The advocates of this view admit that there is language in *Nichols* v. *Shepard,* 63 N. H. 391, and in *Preston* v. *Cole,* 64 N. H. 459, to the effect that when all the claimants stand in equal degree to the testator such as "three grandchildren" they take *per capita.* They point out, however, and correctly, that each of these cases involved next of kin and not lineal descendants and they argue that although these decisions on their facts are sound the statements made in *dictum* are erroneous.

The parties could not find a previous decision in New Hampshire on the particular issue involved here and we know of none. *Nichols* v. *Shepard, supra,* was decided in June, 1885, and *Preston* v. *Cole, supra,* in 1887. Louis G. Hoyt in his work entitled "Practice in Proceedings in The Probate Courts of New Hampshire" which has been generally used by the members of our bar as a source of authority on probate matters since 1901, states on page 242, that if the only descendants are grandchildren, being of equal degree of kinship to the intestate, they take *per capita.* He cites in support of that proposition the above cases.

Although there are instances to the contrary (the decree of the probate court in this case being one) it is our understanding that the interpretation of our statute set forth in the above cases and in Hoyt's has been followed by our courts of probate and by the members of our bar in the distribution of estates. The reasons advanced for a contrary interpretation are not of such a compelling nature as to necessitate an overturning of this long standing interpretation of our statute with the disastrous consequences which would inevitably result in numerous cases. *Green* v. *Bancroft,* 75 N. H. 204, 207. We have not found it necessary however to place our decision on that basis as we are of the opinion that the statements in *Nichols* v. *Shepard, supra,* and in *Preston* v. *Cole, supra,* and in Hoyt's to the effect that when the claimants all stand related to the intestate in equal degree they take *per capita,* enunciate the proper construction of the statutory provisions in question.

Distribution is to be made in accordance with the decree of the Superior Court which is affirmed subject to the following modifications, viz; (1) the share of the heirs of George D. Colony is to be distributed in accordance with the terms of agreements entered into among the parties concerned, (2) the $5,000 bequests each to Henry and George are to be distributed to their respective legal representatives.

*Case discharged.*

All concurred.