[Civ. No. 16002. First Dist., Div. One. Feb. 21, 1955.]

WINIFRED A. LEONARDINI et al., Appellants, v. WELLS FARGO BANK AND UNION TRUST COMPANY, as Trustee, etc., et al., Respondents.

10

W. D. Prideaux and Joseph L. Bortin for Appellants.

Allen G. Wright and Albert F. Skelly for Respondents.

PETERS, P. J.—Mrs. Winifred Leonardini is the life tenant, and her son, Bradford Parrish, is a remainderman, of a trust set up by the will of Robert F. Lopez. By this proceeding these two beneficiaries sought to invade the corpus of the trust by asking for Mrs. Leonardini a monthly income in excess of the income of the trust, and by seeking for the remainderman a monthly income prior to the death of the life tenant. At the commencement of the trial the proceeding as to Mrs. Leonardini was voluntarily dismissed. A guardian was appointed to represent the interests, if any, of any unborn children of Bradford's that might have an interest in the remainder. This guardian joined in the answer of the trustee in opposing the invasion of the corpus of the trust,[1] but at the trial[2] joined with Mrs. Leonardini in consenting to the invasion. The trial court refused to permit the invasion. Bradford appeals.

The facts giving rise to the controversy are as follows: One Robert Lopez, a retired naval officer, who after his retirement, and up to the time of his death, lived in the household of Mrs. Leonardini, his god-daughter, died testate in 1936. By his will a portion of the estate was devised in trust. The income from the trust was to be paid to Mrs. Leonardini for life, with remainder at her death to "Bradford E. Parrish, or his heirs." Bradford is the son of Mrs. Leonardini, and was, at the time of trial, 37 years of age.

The trust provision in question bequeathed one-quarter of Lopez's contingent interest in the so-called Evans Trust,[3] and

---

[1] There were other parties who joined in the answer, such as the former wife of Bradford, and certain relatives of Mrs. Leonardini, but they took no active part in the proceeding.

[2] There is some dispute between the parties as to whether the guardian actually expressed such consent, or merely stated that she was in "sympathy" with helping Bradford. When asked whether she was in "sympathy" with granting Bradford $400 a month from the corpus, she replied "I certainly am." When asked whether as guardian she was willing to have the order made, she replied "Oh, certainly." There would seem to be no doubt that this amounted to a consent by the guardian to the invasion of the corpus, if she was legally entitled to so consent.

[3] The Evans trust had been created some years before by the brother-in-law of Lopez. By it Robert Lopez and his brother might become entitled to certain property upon the death of the life tenant of the trust. The two Lopez brothers agreed that when this remainder vested

the rest, residue and remainder of his estate to respondent trustee. The trust provisions require that the net income shall be paid to Mrs. Leonardini for life, this portion of the trust being made a spendthrift trust, and then provides:

"This trust shall cease and determine upon the death of said Winifred A. Leonardini and all the property then forming the property of this trust fund shall then go to Bradford E. Parrish or his heirs."

Under this section, the remainderman, Bradford, was entitled to nothing from the trust until the termination of the life estate of his mother. Nevertheless, Bradford contends that he is entitled to invade the corpus of the trust estate prior to his mother's death because of the following facts:

In 1934, prior to the death of Robert Lopez, Bradford sustained a serious head injury. Mr. Lopez paid the hospital and doctors' bills totaling over $3,000. After the death of Lopez in 1936, and after the establishment of the trust in 1944, Bradford suffered a second head injury which required extensive treatment. In 1948, on the application of Bradford, the corpus of the trust was successfully invaded by Bradford who secured a court order that $10,000 of the corpus should be used to pay his hospital and doctors' bills. Apparently Bradford did not completely recover from his injury, and his doctors recommended as practical therapy that he should attempt some form of organized study. Bradford decided to study law, and enrolled in a law school. The court found that his health and nervous condition improved as a result of this organized study. It is the theory of his petition that he cannot continue these studies without some financial assistance, and that from the corpus of the trust he should be advanced $400 a month until he becomes self-supporting. Undoubtedly, the evidence shows, and the trial court in effect found, that the law studies of Bradford were beneficial to him. His mother, the life tenant, as well as the guardian for the unborn children of Bradford, consent to the invasion of the corpus.

The trial court found the facts substantially as above set forth and then found that the remainder to Bradford "or

they would equally divide it. It was this remainder that was referred to above. When Robert Lopez died in 1936 the life estate in the Evans trust had not yet terminated. It was not until 1944 that the executor of the estate of Robert Lopez received the remainder of the Evans trust. In that year about $240,000 was distributed to the Wells Fargo Bank for the establishment of the trust here involved. Other than the interest in the Evans trust, the residue of Robert Lopez's estate was very small.

his heirs," bequeathed to him a vested remainder subject to being defeated if he did not survive his mother. In that event, the heirs would take, said the court, not by descent, but by purchase. Thus, the interest of Bradford was found to be vested but defeasible. The court then went on to find that the main purpose of Lopez was to provide a life estate for Mrs. Leonardini, and that the terms of the will "do not reflect the showing of great affection for said Bradford E. Parrish by the Deceased, nor do the terms of the Will of the Deceased, above referred to, show that the guarding of the corpus of the trust fund was made so that Bradford E. Parrish would have over a quarter of a million dollars or any other sum at the death of his mother." The court found that the protective provisions surrounding the trust were for the benefit and protection of the life tenant.

In its conclusions the court determined that the interest of Bradford was a vested defeasible interest, subject to the condition that he survive his mother; that in the will there is no provision authorizing the trustee to distribute any of the corpus during the life of the life tenant, and that if Bradford fail to survive his mother the remainder would go to his heirs as purchasers. The court also concluded that it was without authority to invade the corpus of the trust without the consent of all the remaindermen adversely affected, and that, as to the remaindermen who were the unborn issue of Bradford, there "is no one who could give any consent to such a misuse and dissipation of the corpus of said trust fund, which could or would be binding upon such unborn issue."

At the inception of the discussion it should be stated that there is no doubt that there is nothing in the will, or the decree of distribution, authorizing the trustee to use any portion of the corpus for the benefit of Bradford during the lifetime of the life tenant, his mother. Appellant and respondents also agree that a court, sitting in equity, may modify a trust, if the court believes, based upon the provisions of the will, and upon the surrounding circumstances, that the settlor would have taken such action had he foreseen the emergency that has arisen. ▮ It is well settled that, in the exercise of this power of permitting what the court believes that the settlor would have permitted had he anticipated the emergency that has arisen, the court may permit a deviation from the express terms of the trust, and may even permit a violation of an express term of the trust. (4 Pomeroy's Equity Jurisprudence (5th ed.), § 1062b; *Donnelly* v. *Na-*

*tional Bank of Washington,* 27 Wn.2d 622 [179 P.2d 333].) But this power to modify a trust is a limited one. It is to be exercised sparingly and only in the clearest of cases. ▮ Moreover, all of the parties to this appeal are agreed, and it is the law, that where the rights of residuary beneficiaries may be adversely affected by the modification, such modification is not permissible unless all of the beneficiaries adversely affected consent. (See *Estate of Van Deusen,* 30 Cal.2d 285 [182 P.2d 565]; *Wogman* v. *Wells Fargo Bank & Union Tr. Co.,* 123 Cal.App.2d 657 [267 P.2d 423]; Rest., Trusts, § 168; 2 Scott on Trusts, p. 852.)

In the instant case Mrs. Leonardini, the life tenant and the one most directly affected by the invasion of the corpus, consented to such action. Bradford, the remainderman, by bringing this proceeding, not only consents but insists upon the modification. If these are the only two persons who have an interest in the trust, then all the consents necessary to confer upon the court the power to consider the merits of the application have been given.

On the merits of the application, and assuming that Mrs. Leonardini and her son are the only beneficiaries of the trust who could be affected by the modification, the court would have been justified in concluding that, under the facts, this was not a proper case in which to exercise the power, even though both beneficiaries consented. The court found all the facts that would have justified a denial on the merits. It is true that the trial court also found that beneficial rehabilitation of Bradford has followed from his organized study schedule. Indeed, the trial court even noted the probability that the failure to receive additional funds may cause a curtailment of this beneficial therapy program and perhaps a relapse in the mental health of the appellant. But a showing of need is not equivalent to a showing that this need should be met by invading the corpus of this trust. The trial court found that the legal and moral duty of supporting appellant rests primarily upon his mother. She receives an income of $600 a month from the trust and also rent free occupancy of a house maintained by the trustee. While the lower court was solicitous of appellant's well-being, it concluded that the primary duty of support rested upon the mother. Moreover, in order to invade the corpus, the court, as already pointed out, would have to ascertain the presumed intent of the testator—that is, ascertain what the testator would have done had he contemplated the claimed emergency that has arisen.

 The trial court determined that the main purpose of the testator was to protect Mrs. Leonardini, even against herself, and that the testator's interest in the appellant was secondary. An examination of the terms of the trust discloses that this is so. The testator set up this trust for the life of Mrs. Leonardini and provided that the total income should be paid to her for that period. To protect her against herself, and to assure that this income should not be depleted by her acts, he made this a spendthrift trust. It certainly violates the spirit of the spendthrift provisions to permit Mrs. Leonardini, by consenting to an invasion of the corpus, to thus permit her to consent to its diminution—the very thing the testator tried to prevent by the spendthrift provision.

 Thus, the trial court found all the necessary facts that would have justified it, on the merits, in denying the requested modification. The judgment can be sustained on this ground alone, even if Mrs. Leonardini and appellant were the only persons with an interest in the trust, and even though the trial court may have been in error in holding that others, in addition to appellant, have an interest in the remainder. These findings, under the circumstances, even if erroneous, could be disregarded as surplusage. (*Alonso* v. *Hills*, 95 Cal.App. 2d 778 [214 P.2d 50].)

The trial court, however, did not rest its judgment solely on the above findings, but also concluded that the interest of Bradford in the remainder was vested, but defeasible. The court interpreted the language that upon the death of Mrs. Leonardini the trust should terminate and the corpus should then go to appellant "or his heirs," to mean that the will created remainders in the alternative, that is, such words gave the heirs an interest if appellant predeceased the life tenant. It held, therefore, that appellant's interest was vested but defeasible, that is, subject to being divested if appellant predeceased the life tenant. If appellant should predecease the life tenant, the court held that the remainder interest would go to the heirs by purchase and not by descent. Based on this holding, the trial court concluded that it was "without authority" to invade the corpus without the consent of the live and unborn heirs of appellant, and that as to such unborn heirs "there is no one who could give any consent to such a misuse and dissipation of the corpus of said trust fund, which could or would be binding upon such unborn issue." Thus, in effect, the court held that consent attempted to be given by the guardian was ineffectual.

These findings present two issues: First, was the court correct in holding that under the trust the heirs of appellant take by purchase and not by descent, and second, if so, was the consent to the invasion of the corpus given by the guardian for the unborn heirs legally sufficient?

As already indicated, the trial court held that the interest of appellant was vested but subject to being divested by his death before that of the life tenant. If the interest of appellant is either contingent or defeasible, the heirs take by purchase and not by descent, and their consent is indispensable to an invasion of the corpus. The parties seem agreed that the interest of appellant was vested, and base that conclusion on *Estate of Norris*, 78 Cal.App.2d 152 [177 P.2d 299]. Undoubtedly, this court held in that case that a decree of distribution which provided that a gift, after a life estate, to the children "or their legal heirs by right of representation," created a vested remainder in the children. The quoted phrase is, of course, equivalent to "or his heirs" found in the present case. But the court did not hold that in every case the quoted phrase made the remainder a vested one, but held that under all the provisions of the decree of distribution, discussed at length in the opinion, an intent appeared to make the remainder vested. The cases on this subject are in hopeless conflict, and seldom, if ever, turn solely upon the words "or his heirs" or their equivalent. The great majority of them turn upon all of the provisions of the trust, the courts trying to ascertain the intent of the testator. (See anno. 128 A.L.R. 306.) That annotation certainly refers to many cases holding that such a remainder, as distinguished from one to X "and his heirs" may be contingent and is not always vested.

The Restatement of Property, section 252, provides:

"In a limitation purporting to create a remainder or an executory interest, in 'B or his children,' or in 'B or his issue,' or in 'B or his descendants,' or by other language of similar import, the alternative form tends to establish as to the interest of B that

"(a) a requirement of survival to the end of all preceding interests exists; and

"(b) such survival is a condition precedent of such interest."

In the instant case there is little in the decree of distribution or in the will from which to determine the testator's intent in this regard. It would seem that in the absence

of any explanatory language that the language to X "or to his heirs," creates a contingent and not vested remainder.

But even if the remainder were vested it was then subject to a condition, that is, subject to being divested by death before that of the life tenant. There can be no doubt that a remainder may be vested and still be defeasible, that is, subject to being divested upon failure of a condition. Section 694 of the Civil Code recognizes this. Again this becomes a question of interpretation. In the absence of any other language in the will or decree of distribution explanatory of the phrase, under the constructional preference stated in section 252 of the Restatement of Property above quoted, such phrase should be construed, if not creating a contingent interest, at least as creating a defeasible vested interest. (See cases collected 128 A.L.R. 306, at p. 336 et seq.) It is worthy of note that the will and decree of distribution here involved contain some language in support of the interpretation that this remainder was intended to be defeasible. The will, in addition to the trust here involved, created another trust. This other trust created a life estate for one Claribel H. Kirby, and after her death a life estate to Mrs. Leonardini, "or if she be not then living to her son Bradford E. Parrish or his heirs." The decree of final distribution, which of course controls the language of the will, interprets this clause to mean "The remainder estate or interest, after the termination of the life estate of Claribel Hughes Kirby in that certain trust fund . . . is hereby distributed to Winifred A. Leonardini, on the condition and provided that she survive said Claribel Hughes Kirby, and otherwise to Bradford E. Parrish, the son of said Winifred A. Leonardini, on the condition and provided that he, too, survive the said Claribel Hughes Kirby as well as his mother, Winifred A. Leonardini, and otherwise to the heirs of said Bradford E. Parrish." This interpretation of the phrase to "Bradford E. Parrish or his heirs" appears in the decree of distribution before the provisions in reference to the instant trust. It is reasonable to assume, inasmuch as "Bradford E. Parrish or his heirs" are given remainders in two trusts, and the court having already expressly interpreted such language to mean as to the first trust that Bradford must survive his mother to take, that the court, in its decree of distribution, when it simply provided as to the second and instant trust that the remainder was to go to appellant "or his heirs" intended that language to mean precisely what it, in other portions of the decree, had already

held the same language to mean. The words of the will as to both trusts were identical. They obviously should be interpreted to mean the same thing.

██ Thus, whether the interest of appellant is vested but defeasible, as held by the trial court, or contingent, the heirs of appellant, including unborn issue of appellant, have an interest in the corpus of the trust. The trial court was correct, therefore, in holding that the corpus of the trust could not be invaded without their consent. The guardian for such unborn issue attempted to consent to the invasion. That being so, was the trial court correct in holding that it was "without authority" to invade the corpus because there was "no one who could give any consent to such a misuse and dissipation of the corpus . . . which could or would be binding upon such unborn issue"? We think that it was.

The guardian was here appointed under the terms of section 373.5 of the Code of Civil Procedure. She joined with the trustee in an answer opposing the petition. But, as already pointed out, as a witness, she consented to the invasion. As a guardian she was duty bound to protect the interests of her wards, the unborn issue of appellant, who could not speak for themselves. ██ The representation by the guardian must be real and not merely formal. (*Wogman* v. *Wells Fargo Bank & Union Tr. Co.*, 123 Cal.App.2d 657 [267 P.2d 423].) The guardian had no power to consent to an act hostile and adverse to the interests of her wards, in the absence of some showing that such invasion of the wards' rights might be beneficial to them. There are cases where a guardian of unborn issue may lawfully consent to an invasion of the corpus of the trust in which they have a remainder interest. Thus, in *Mabry* v. *Scott*, 51 Cal.App.2d 245 [124 P.2d 659], the court permitted the guardian to consent to a compromise settlement that affected the corpus, because, under the facts, this saved the corpus from being depleted by expensive litigation. Other situations undoubtedly exist where it would be to the best interests of the unborn remaindermen that their guardian be permitted to consent to an invasion of the corpus. But, in the absence of any evidence that the unborn remaindermen would be so benefited, the guardian is without power to consent to direct invasion of the unborn remaindermen's rights. That is the necessary implication of the Wogman case, *supra*.

In the instant case, the trial court on the showing made was correct in concluding that it was "without authority" to permit the invasion of the corpus—that is, without authority to accept the purported consent of the guardian in the absence of showing of benefit to the wards.

Appellant, apparently recognizing that the guardian was under a positive duty to represent the best interests of her wards, and had no power to consent to an invasion of their rights in the absence of evidence of some benefit to them, argues that the guardian in consenting may have felt that she was helping the unborn issue to come into existence by making Parrish self-supporting instead of living in "poverty." Is there any reasonable ground for believing that the "rich" are more likely to have children than the "poor"? We think not. There was not one word of evidence that the invasion would, in any way, benefit the wards. The evidence is to the contrary. Under those circumstances the lower court was justified in finding, in effect, that the consent was not consistent with the duty owed the unborn issue, and that under the facts there was no real consent. Therefore it was "without authority" to permit the invasion.

Rather belatedly, after failing to even mention res judicata in his opening brief, appellant in his closing brief argues that the issue here involved has already been litigated. Appellant had pleaded, and there was no denial, that in 1948 the superior court had permitted Parrish to invade the corpus to the extent of $10,000 to pay hospital bills and doctors. There is nothing in the record to show the circumstances of that award. There is nothing to show that the court then determined that appellant's interest was vested and indefeasible. There is nothing to show whether or not a guardian was appointed and whether he did or did not consent to the invasion. There is nothing to show whether that invasion was or was not in the best interests of the unborn issue. What issues the prior adjudication settled are not set forth. The prior judgment cannot be used to foreclose issues which were not necessarily decided in that action. Moreover, even if, in the prior proceeding, the court necessarily decided that appellant's remainder was indefeasibly vested, so that respondent would be estopped from challenging that conclusion, such conclusion would not require a reversal. That is so because, as already pointed out, even if Mrs. Leonardini and her son are the only persons beneficially interested in the trust, the trial court was justified in finding, on the

merits, that this was not a proper case to exercise the extraordinary power of modifying the terms of an express trust.

The judgment appealed from is affirmed.

Bray, J., and. Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 20, 1955.