[S. F. No. 20238. In Bank. May 11, 1961.]

Estate of J. S. FERRY, Deceased. HARRY L. SILVA et al.,
Appellants, v. ISABELLE LUCAS et al., Respondents;
CLARENCE TELLES et al., Objectors and Appellants.

Moore & Snider, Ray F. Snider, Jr., and John A. Grennan for Appellants.

LeRoy A. Broun for Objectors and Appellants.

Harris, Darter & Older and Guernsey Carson for Respondents.

DOOLING, J.—These are appeals from a decree settling a trustee's final account and distributing the property of the estate of J. S. Ferry, who died testate in 1951.

By a will executed on June 13, 1942, decedent J. S. Ferry left $1.00 to each of his three daughters, Isabelle Lucas, May Ferry and Rose Murphy, and left an unrestricted gift of the residue to his son Joseph J. Ferry. On May 5, 1949, decedent executed a codicil partially revamping his testamentary scheme by establishing, in lieu of the outright residual gift, a trust for the benefit of his son Joseph. This codicil, after confirming the original bequest of $1.00 to each of the three daughters "and no more," provided that the trust was to terminate upon alternative events: either 20 years from the date of the codicil's execution or upon the son Joseph's death, whichever occurred first. If the son Joseph was living at the termination of the trust he was to receive possession of the residue but if he died before the 20-year period elapsed, then the residue was to go to the son's wife and issue, but if "no wife or issue, then . . . to [decedent's] sister, Mary Silva." The testator died with this codicil in effect. Among those surviving him were Joseph Ferry, the decedent's three daughters, and Mary Silva, decedent's sister. Decedent was also survived by his wife who is not involved here because by a separation agreement she renounced any claim to the estate of J. S. Ferry.

The 1952 decree of distribution, in its material parts, is almost a verbatim excerpt from decedent's codicil. After ordering distribution of the $1.00 gift to each of decedent's daughters and after setting forth the powers and duties of the trustee, Joe Dutra, in handling the residue as a trust for the benefit of decedent's son, the decree then provided: "The trust herein created shall terminate on May 5, 1969, at which time said Trustee shall distribute all the residue of the trust herein created to said JOSEPH J. FERRY, or to his wife and to his issue, in equal shares, should the said JOSEPH J. FERRY be then deceased; and if he shall leave no wife or issue then said Trustee shall distribute said trust estate to MARY SILVA, sister of deceased. *Should the said* JOSEPH J. FERRY *die before the natural termination of this trust, said trust estate shall be distributed immediately to the wife and living issue of said*

JOSEPH J. FERRY, *in equal shares, and if none, then to* MARY
SILVA, *sister of decedent."* (Emphasis added.)

On December 18, 1953, Mary Silva died intestate survived
by her daughter and son, Mamie and Harry Silva, her sole
heirs. Thereafter, on January 14, 1957, decedent's son, Joseph
J. Ferry, died testate leaving neither wife nor issue but devis-
ing whatever interest he had in the trust property to Joseph
and Clarence Telles. Joseph and Clarence Telles are not
related to the testator. Thus the principal issue of this case
arises from the fact that Mary Silva, the ultimate possible
taker, predeceased Joseph J. Ferry, the first-named taker
under the decree and codicil.

After the death of Joseph, the trust beneficiary, the trustee
petitioned the court for instructions. The court entered its
decree concluding that by reason of "non-fulfillment of con-
ditions precedent imposed by the codicil of J. S. Ferry,
deceased, and the failure of decedent to otherwise dispose of
the residue of his estate, J. S. Ferry died intestate as to the
[remaining] trust property." The court then ordered distri-
bution of the residue of the trust property in shares of one-
fourth to each of decedent's three daughters and one-fourth
to Joseph's devisees, Joseph and Clarence Telles. It is implicit
in this decree that the court determined that Mary Silva would
have had to survive Joseph in order for her interest to be
inheritable by Mary's heirs.

Mary Silva's two children, Harry and Mamie Silva, have
appealed from the decree. The distributees of Joseph's estate
have filed a cross-appeal from so much of the decree as orders
distribution of three-fourths of the trust estate to decedent's
three daughters. The three daughters of decedent are respond-
ents and ask that the court's determination of intestacy be
upheld.

[■■] There can be no doubt here that the governing docu-
ment is the 1952 decree of distribution (*Estate of Loring,*
29 Cal.2d 423, 427 [175 P.2d 524] ; *Estate of Easter,* 24 Cal.2d
191, 194 [148 P.2d 601] ; *Estate of Haney,* 174 Cal.App.2d 1,
6 [344 P.2d 16] ); and since there are no extrinsic matters
that require evaluation we are presented only with questions
of law (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ;
*Estate of Jones, ante,* pp. 531, 536 [11 Cal.Rptr. 574,
360 P.2d 70]). [■■] In addition, just as it is a court's
primary object to determine the testator's intent when con-
struing a will, the same is true when a court is called upon to
construe the provisions of a decree of distribution. (Prob.

Code, § 101; *Estate of Haney, supra,* 174 Cal.App.2d at p. 9.)
 Quite often, however, the testator's intent is not al-
together clear, and when the testator's intent appears
dubious, myriad constructional rules and preferences may be
sought to be applied. These rules of construction must be
carefully applied in context and as aids in determining the
testator's intent. (*Estate of Jones, supra, ante,* at pp. 535-
536.) In attempting to clarify doubts as to the intent
of the testator in this case, the briefs direct considerable atten-
tion to the "vested" and "contingent" character of the
interests or argue the lack of these attributes. In response to
these arguments, it appears to us that there are two possible
constructional approaches to the words employed in both the
decree and the codicil. But for reasons we shall point out, it is
not necessary in this case to decide which of these two possible
approaches is to be applied. Both have the same result upon
the major question of the case, that question being whether
an implied condition of her surviving Joseph J. Ferry is
applicable to Mary Silva's interest.

The first of the two possible constructional approaches to
this language would characterize the son Joseph's interest as
vested subject to defeasance. "There can be no doubt
that a remainder may be vested and still be defeasible, that
is, subject to being divested upon failure of a condition."
(*Leonardini* v. *Wells Fargo Bank & Union Trust Co.,* 131 Cal.
App.2d 9, 16 [280 P.2d 81, 49 A.L.R.2d 1085]; Rest., Prop-
erty, Future Interests (1936), § 157.) [5] Title to the
trust property would then be presently vested in interest in
Joseph (as opposed to vested in possession) during his life
but yet defeasible upon his failure to survive the term of the
trust. (See *Leonardini* v. *Wells Fargo Bank & Union Trust
Co., supra,* 131 Cal.App.2d at pp. 14-15; *Estate of Zuber,* 146
Cal.App.2d 584, 592-593 [304 P.2d 247]; *In re Estate of
De Vries,* 17 Cal.App. 184, 197-198 [119 P. 109]; Rest., Prop-
erty, Future Interests, § 157, comment on clause (c).) By
this approach, and without now considering an implied con-
dition of Mary's survivorship, nonsurvival is the condition
subsequent to Joseph's vested interest which permits Mary
Silva's interest to take effect in possession by virtue of an
"executory" interest or devise.[1]

---

[1]*Estate of Zuber,* 146 Cal.App.2d 584, 592 [304 P.2d 247], has settled
much possible confusion on the nomenclature of interests that are vested
but limited upon a condition subsequent by employing the term "execu-

784

■ The other possible constructional approach to the language of this decree would result in a finding that Joseph's interest is contingent and not vested in any respect. By this rationale, the condition that Joseph survive until the natural termination of the trust is a condition precedent rather than a condition subsequent. Furthermore, Mary Silva's interest would also be contingent and not vested since a vested interest cannot reasonably be dependent upon a precedent contingent interest.[2] The situation thus created is one of "alternative contingent remainders" or, as they are sometimes called, "contingent remainders with a double aspect." (See Civ. Code, § 696; *Dickey* v. *Walrond*, 200 Cal. 335, 344 [253 P. 706]; *Estate of Glann*, 177 Cal. 347, 352 [170 P. 833]; *Leonardini* v. *Wells Fargo Bank & Union Trust Co., supra*, 131 Cal.App.2d 9, 17; *Hunt* v. *Lawton*, 76 Cal.App. 655, 659-660 [245 P. 803]; *County of Los Angeles* v. *Winans*, 13 Cal.App. 234, 243-244 [109 P. 640]; *In re Fitzgerald's Estate*, 2 Cof. 172, 176-177; Rest., Property, Future Interests, § 278.) Upon Joseph's failure to satisfy the condition precedent of surviving until the natural termination of the trust, the interest would vest substitutionally in the alternative contingent remainderman, Mary Silva. Thus, according to this approach, the same result is achieved as in the approach first discussed: The trust property vests in possession in Mary Silva automatically upon Joseph's death before the natural termination of the trust. ■ "In other words, if the court finds that the deed or will imposes a requirement that the taker survive until a certain time, then it is frequently immaterial whether that requirement is a condition precedent (thus making the

---

tory'' interest or devise. They have variously and otherwise been called contingent remainders, conditional limitations and contingent limitations. (See Civ. Code, §§ 708, 778, 764; Prob. Code, § 143.)

[2]Appellants Silva, while recognizing that the vested-contingent approaches are not determinative of this case, have nevertheless urged that the first-stated limitation which describes Joseph's interest is contingent while the second-stated limitation, describing Mary Silva's interest, is of a vested character. The impossibility and undesirability of a vested interest following a contingent interest is explained in the Restatement: "As long as the first-stated limitation creates a fee interest subject to a condition precedent the second-stated limitation must be construed to create also an interest subject to a condition precedent. Otherwise, there would be a violation of the rule . . . that 'no remainder limited after a limitation in fee, can be vested.' This traditional rule is also supported by the fact that the attribution of vestedness to the interest created by the second-stated limitation would be likely, under some circumstances, to give to the taker of such interest, advantages and preferences over the takers under the first-stated limitation not reasonably inferable to have been intended.'' (Rest., Property, Future Interests, § 278, comment a.)

interest contingent) or whether the requirement is a condition subsequent operating to divest a previously vested interest.'' (Simes and Smith, Future Interests (2d ed. 1956), § 575, p. 8.) In either case, Joseph's interest is completely destroyed when he fails to survive the term of the trust and his devisees, Joseph and Clarence Telles, can have no claim on the trust property.

Furthermore, it is clear that by virtue of Civil Code, section 699,[3] an interest, whether vested, contingent or of an executory nature, may be transferred *inter vivos,* devised, or be the subject of intestate succession. Although in some respects the distinction between the types of future interests is important, upon the attribute of alienability and descendibility there is no distinction. [ Therefore, aside from the question whether there is an implied condition in the language of the decree of distribution that Mary Silva need survive Joseph in order to take a transmissible interest, Mary Silva's interest is descendible. (See *Estate of Zuber, supra,* 146 Cal. App.2d 584, 591-593.)

Cross-appellants have argued, however, that *Estate of O'Connor,* 158 Cal.App.2d 187 [322 P.2d 616], compels the conclusion that Mary Silva's right to the property is not an ''interest'' but is rather a ''mere possibility'' or ''expectancy'' and, as such, is not inheritable by Mary Silva's heirs. (See Civ. Code, §§ 700, 1045.) In *Estate of O'Connor* the income from testator's property was to go to his brothers and sisters and upon the death of the last survivor among them the property was to pass to four named schools. But each school was to match the sum given it upon penalty of losing the grant. If the schools failed to match the grant, a gift over was provided to a hospital. The four schools were held to have interests ''vested subject to divestiture'' and the hospital a ''mere expectancy.'' (*Estate of O'Connor, supra,* 158 Cal. App.2d at pp. 195-196.) In using the term ''expectancy'' in real property law, however, a careful distinction must be made between those instances where it is used in relation to ''expectant *estates*'' or future interests (Civ. Code, § 699 [caption]) and those in which it is used to refer to a ''mere possibility, such as the expectancy of an heir apparent.'' (Civ. Code, § 700; *Estate of Zuber, supra,* 146 Cal.App.2d at p. 591; see Simes and Smith, Future Interests, *supra,* § 2,

---

[3]Civil Code, section 699: ''Future interests pass by succession, will, and transfer, in the same manner as present interests.''

p. 5.) If the four schools in *Estate of O'Connor* had, as the court said, interests that were vested subject to defeasance, then, consistent with the authorities we have reviewed, the hospital held an executory interest. Thus in *Estate of O'Connor* it would appear that the court was referring to an expectant *estate*. ▇ To the extent that Mary Silva's right to the trust property may be characterized as an executory interest or devise it is also an expectant estate. However, this does not operate to diminish the effect of the interest. In fact, Civil Code, section 697, states that "merely because of the improbability of the contingency on which it is limited to take effect" such an interest may not be denied effect. We therefore disapprove of the inference, if any, created by *Estate of O'Connor* that an executory interest is a "mere possibility" of the type contemplated in Civil Code, section 700. (See *Estate of Zuber, supra,* 146 Cal.App.2d at pp. 591-592.)

▇ This discussion leads to the principal question of the case: whether the testator intended that Mary Silva must survive the trust beneficiary, Joseph J. Ferry, before her interest could be transmissible to her heirs. It is noteworthy that the decree and codicil attached express conditions of survivorship to the interests of Joseph and to any wife or child of Joseph but do not add any words of that character to the limitation describing Mary Silva's interest. Thus if a condition of survivorship attaches to Mary Silva's interest it must be implied from the terms of the codicil and decree; and if such a condition was intended, Mary Silva's heirs could take no interest in the trust property.

▇ The difficulty with the arguments seeking to imply Mary Silva's survival of Joseph as a condition is that they would result in holding that because it is *express* that Joseph must survive until the period of distribution to take an inheritable interest, a similar contingency should be *implied* as to Mary. Although the limitations describing the nature of their interests do have in common the effect of Joseph's death before the termination of the 20-year trust period, that fact alone cannot mean that common conditions and contingencies were intended to prevail throughout the entire devise. The "precise contingency" effecting her interest in possession is not her survival but Joseph's death. (*Cf.* Prob. Code, § 143.) ▇ "Certainly there is no rule of law that a condition precedent of survivorship is implied wherever a gift is subject to another condition precedent." (Simes and

Smith, Future Interests, *supra*, § 594, p. 44; see supporting this rule as to contingent remaindermen: *Tapley* v. *Dill*, 358 Mo. 824 [217 S.W.2d 369, 373-374]; *In re First National Bank of Ithaca*, 2 App.Div.2d 292 [153 N.Y.S.2d 857, 862]; *Colony* v. *Colony*, 97 N.H. 386 [89 A.2d 909, 911-912]; *Fulton* v. *Teager*, 183 Ky. 381 [209 S.W. 535, 538]; *Fisher* v. *Wagner*, 109 Md. 243 [71 A. 999, 1000-1003, 21 L.R.A. N.S. 121]; *Loring* v. *Arnold*, 15 R.I. 428 [8 A. 335, 336].) To draw a contrary conclusion would produce the result that very few contingent interests of this type would be descendible or devisable.[4] Thus here, as in other instances, a finding that Mary had to survive Joseph in order that her interest might be descendible to her heirs requires a "literal basis" or a clear intent deducible from the particular words employed in the instrument. (*Estate of Haney, supra*, 174 Cal.App.2d 1, 11.) "Where the requirement of survival is found to exist, it is usually applicable only to the first named takers. *The persons who are the alternative takers* need not survive unless such a requirement is specifically expressed." (Simes and Smith, Future Interests, *supra*, § 581, p. 24; emphasis added.) Section 255 of the Restatement of Property, Future Interests, supports the propriety of this construction. Section 255 reads: "In a limitation purporting to create a remainder or an executory interest in a person, which is ambiguous as to whether such interest is, or is not, subject to a requirement of survival to some particular time, the absence, with respect to such particular time, of both an alternative and supplanting limitation tends to establish that such interest is free from any requirement of survival to such time whenever such construction results in more interests being disposed of than would otherwise be disposed of by the

---

[4]The Code Commissioners' note to section 741, Civil Code, quoted in *Estate of Zuber, supra*, 146 Cal.App.2d at page 591, seems particularly pertinent in this connection: "Much nice learning has been thrown around the subject of contingent remainders, and many nice distinctions and refinements have accumulated, but in many of the States, and by this Code, future interests include all estates in expectancy, vested, and contingent, and all future interests are descendible, devisable, and alienable in the same manner as estates in possession, so that a thorough examination of the common law rules concerning remainders, and the delicate questions springing therefrom, must be esteemed as of more interest in showing the learning and scholarly attainments of the early law writers rather than as of any practical utility." Since property passes by descent or devise only on the death of the previous owner, it is obvious that a contingent remainder could only pass by descent or devise where the contingent remainderman need not survive the holder of the previous estate.

conveyance in question.'' To here imply a condition of survivorship of Mary Silva beyond the death of Joseph would result in the remainder interest being undisposed of, and this quoted rule of the Restatement therefore supports the conclusion that the requirement of Mary's surviving Joseph should not be implied. Thus, absent a clear intent deducible from the words of the codicil or decree we are unwilling to imply a condition that Mary, as executory devisee or alternative contingent remainderman, must survive Joseph, the first-named and primary taker under the instrument.

 The fact that the decree and codicil did not append the word ''heirs'' after the limitation devising an interest to Mary does not preclude her interest's descendibility. Probate Code, section 107, provides: ''The term 'heirs,' or other words of inheritance, are not requisite to devise a fee, and a devise of real property passes all the estate of the testator, unless otherwise limited.'' (See Civ. Code, § 1072.)

 Argument has also been made that Probate Code, section 122, compels the conclusion that Mary had to survive Joseph in order to take an inheritable interest. Section 122 provides: ''Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession.'' This section announces the effect of a provision for survivorship, *simply*. In the context of this case, the words of survivorship relate to particular persons, Joseph J. Ferry, his wife, and to a class of persons, his issue. Consistent with what we have said, the words of survivorship cannot be said to refer to the entire devise but only to those interests to which the reference is clearly made. Thus since there is no reference in this language to survivorship, *simply*, section 122 does not apply to change the character of Mary's interest.

 Nor is the argument convincing that the words ''then to Mary Silva'' mean that Mary must be alive at Joseph's death to assure her an interest which her heirs could take. In the case of *Hall* v. *Wright,* 17 Cal.App. 502 [120 P. 429], the court was referring to the time for *identifying a class* of takers by reason of the limitation of ''then to the heirs of her body,'' and held that in such a context ''then'' meant the expiration of the preceding life estate. (*Hall* v. *Wright, supra,* 17 Cal.App. at p. 507.) Clearly the case and framework in which the word ''then'' was there interpreted is distinguishable and inapplicable here.

We conclude that Mary Silva did not have to outlive Joseph in order for her heirs to take the trust property on Joseph's death. Since Joseph's interest terminated on his death, the devise to Joseph and Clarence Telles passed no interest to them; and since the property passed to Mary's heirs upon Joseph's death, the testator's three daughters can take no interest therein. This result carries out the testator's expressed intention that his three daughters should each receive $1.00 "and no more."

The decree is reversed with directions to order distribution to Mary Silva's heirs, Harry and Mamie Silva.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.